# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-1180

_____

FRANK LEIJA MORENO,

    Appellant,

v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Santa Rosa County.
Clifton Alan Drake, Judge.

March 13, 2024

ROWE, J.

Frank Leija Moreno appeals his judgment and sentence for two counts of human smuggling. The State charged Moreno with two counts of human trafficking involving two persons under the age of eighteen and two counts of human smuggling. Moreno pleaded no contest to two counts of human smuggling in exchange for the State dismissing the two human trafficking counts. Based on our independent review of the record, we agree with appointed counsel that the record reveals no basis for reversal.

*Facts*

The record includes the probable cause arrest affidavit from the Florida Department of Law Enforcement. The report includes the following facts that formed the basis of the charges brought

against Moreno. On December 30, 2020, after observing several moving violations, a Santa Rosa County Sheriff's Deputy conducted a routine traffic stop on Interstate 10 near mile marker 26. Moreno was the driver of the car. He had three passengers: a fourteen-year-old male, a seventeen-year-old male, and a twenty-year-old male. None of the passengers could communicate with the deputy in English.

The deputy described Moreno and the passengers as very nervous, and observed what looked like a bullet hole in the chassis of the vehicle. The Sherriff's office requested assistance from the Florida Department of Law Enforcement. FDLE communicated with the Department of Homeland Security and determined that Moreno was identified by U.S. Customs and Border Protection to be the primary suspect in a Texas alien smuggling incident eight days before his traffic top in Santa Rosa County.

During the stop, Moreno made several statements to law enforcement officers at the scene, including "Hey, I'm going to jail today." After being read his *Miranda* rights, Moreno told officers, "I picked the kids up at a Love's truck stop and I'm taking them to 'Nepal.' But that's all I'm allowed to say about that." Law enforcement believed that Moreno was referring to Naples, Florida.

The juvenile passengers were taken into protective custody and interviewed away from the scene. A translator assisted with the interviews. The juveniles revealed that their journey began when their families paid 8500 quetzal ($1,090.88 USD) to have them brought from Guatemala to the United States. One of the boys planned to live in South Florida with his aunt while working to pay off his family's debt. The other boy was en route to Central Florida to do the same. Both boys told officers that Moreno was part of an organization that transports people across the border. They did not know Moreno before coming to the United States, but expressed Moreno knew of their plans to travel to Florida and find work to pay off their debts.

The juveniles identified the twenty-year-old passenger, Jackson Godinez, as the "coyote"—a person who facilitates and guides persons illegally entering the United States. With help from

2

Godinez, the juveniles traveled from Guatemala, through Mexico, and then to the United States where they arrived in Odessa, Texas. There, they were taken to a safehouse before travelling with Moreno to Florida.

Law enforcement interviewed Godinez while he was in custody. After being advised of his *Miranda* rights, Godinez described the journey to investigators. He had traveled with the juveniles through Guatemala and Chihuahua, Mexico before entering the United States. Moreno met the group while they were still in Mexico to collect money. Moreno contacted the group again once they had crossed the border into Texas. There, Moreno collected more money and drove Godinez and the two boys to a safehouse and provided them with new clothing. A few days later, Moreno, Godinez, and the juveniles departed from Texas to travel to Florida.

Godinez told investigators that he knew one of the boys was to be dropped off two hours into Florida, and the other boy was to be dropped off near Naples. Moreno collected more money from Godinez during the drive. Godinez intended to stay in Florida and work for a family member.

Investigators determined there was sufficient evidence that Moreno knew he was transporting illegal aliens and that he profited off of their transport. Moreno was arrested and charged with two counts of human trafficking and two counts of human smuggling. The trial court accepted Moreno's plea, adjudicated him guilty, and sentenced him to two five-year terms to be served concurrently. After Moreno's judgment and sentence was entered, Moreno sought and was granted a belated appeal.

*Analysis*

Moreno's appointed counsel could not identify any reversible error on direct appeal. Based on our independent review of the record, we find no error by the trial court.

Moreno entered a no contest plea to two counts of human smuggling in exchange for the State dismissing the two human trafficking counts. A defendant may appeal an issue following a no

3

contest or guilty plea only when the issue is expressly reserved and legally dispositive. §§ 924.051(4); 924.06(3), Fla. Stat. (2020). Moreno did not reserve any issues for appeal.

Even so, a limited class of issues remain appealable, including (a) the lower tribunals lack of subject matter jurisdiction, (b) violation of the plea agreement, (c) an involuntary plea, (d) a sentencing error, or (e) as otherwise provided by the law. Fla. R. App. P. 9.140(b)(2)(A)(ii); *see also Amendments to Fla. R. App. P.*, 696 So. 2d 1103, 1104–06 (Fla. 1996). And if an issue is raised concerning an involuntary plea, the defendant must move to withdraw the plea to preserve the issue for appeal. Fla. R. App. P. 9.140(b)(2)(A)(ii)(c); *see also State v. Dortch*, 317 So. 3d 1074 (Fla. 2021) (holding that there is no fundamental error exception to the requirement that a defendant move to withdraw the plea in the trial court before appealing the plea as involuntary). Moreno did not raise any of these challenges nor did he move to withdraw his plea.

The record shows the trial court conducted a plea colloquy that substantially complied with the requirements of Florida Rule of Criminal Procedure 3.172. The trial court explained human trafficking carried a maximum sentence of thirty years and human smuggling carried a maximum sentence of five years. The court also went over the terms of the plea agreement. The court advised Moreno that if he was not a United States citizen, his plea could result in deportation. Moreno confirmed that he understood the rights he forfeited by entering the plea. Moreno further confirmed that his attorney answered all his questions and that he was satisfied with his counsel. Based on Moreno's statements, the trial court accepted his plea as knowingly and voluntarily entered.

As to Moreno's sentence, the record shows the sentence imposed by the trial court was lawful. Human smuggling is a third-degree felony, punishable by up to five years in prison. §§ 787.07(1); 775.082(3)(e), Fla. Stat. (2020). The trial court sentenced Moreno to concurrent terms of five years in prison for two counts of human smuggling. Moreno's sentence does not exceed the statutory maximum.

4

Finding no error by the trial court, we AFFIRM Moreno's judgment and sentence.

B.L. THOMAS and ROBERTS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


Jessica J. Yeary, Public Defender, and Jasmine Russell Dixon, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, Tallahassee, for Appellee.

5